Filed 10/11/22  In re Jordan J. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re JORDAN J., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E078539 |
| Plaintiff and Respondent, | (Super.Ct.No. J265931) |
| v. | OPINION |
| S.J., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Steven A. Mapes, Judge.  Affirmed in part, vacated in part, and remanded with directions.

Karen J. Dodd, under appointment by the Court of Appeal, for Defendant and Appellant.

1

Tom Bunton, County Counsel, and Joseph R. Barrell, Deputy County Counsel, for Plaintiff and Respondent.

In this dependency case, S.J. (Mother) appeals from the juvenile court's order terminating her visitation with her son, Jordan J. She argues that San Bernardino County Children and Family Services (CFS) failed to discharge the duty of initial inquiry into whether Jordan is or may be an Indian child. (Welf. & Inst. Code, § 224.2, subd. (b), unlabeled statutory citations refer to this code.)

In 2016, the juvenile court found that the Indian Child Welfare Act of 1979 (25 U.S.C. §§ 1901 et seq.) (ICWA) did not apply to Jordan under the former state law implementing ICWA. The court selected legal guardianship as the child's permanent plan and terminated jurisdiction on August 11, 2017.

Effective January 1, 2019, Assembly Bill No. 3176 (2017-2018 Reg. Sess.) (Assembly Bill 3176) revised "'the specific steps a social worker, probation officer, or court is required to take in making an inquiry of a child's possible status as an Indian child.'" (*In re T.G.* (2020) 58 Cal.App.5th 275, 296 (*T.G.*).) In 2020, the juvenile court terminated Jordan's guardianship and reopened his dependency case. The court and CFS then had "an affirmative and continuing duty to inquire" (§ 224.2, subd. (a)) as to ICWA's applicability and failed to discharge the expanded duty of initial inquiry under current law. That failure requires us to vacate the juvenile court's finding that ICWA does not apply and order a limited remand for the juvenile court to order CFS to fulfil its

2

duty of initial inquiry under section 224.2. The order terminating Mother's visitation is unaffected by the juvenile court's ICWA finding, so we otherwise affirm.

BACKGROUND[1]

A. *2016-2017 Dependency Proceedings*

In May 2016, CFS received a referral from Dane County, Wisconsin, alleging severe neglect of Jordan, then age four, and his sister[2] after medical neglect contributed to the death of one of Jordan's brothers. Another brother had been removed from the home in January 2016 by Wisconsin authorities, and the family subsequently moved to San Bernardino County while the Wisconsin investigation was pending.

Both Mother and Jordan are diagnosed with Kniest dysplasia, a bone growth disorder causing dwarfism, impaired vision and hearing, and other complications. Jordan's medical history included multiple corrective surgeries. He had a gastrostomy tube (G-tube) surgically placed when he was a few months old to assist with feedings, and Mother admitted having missed an appointment for removal of the G-tube. Because of Jordan's special healthcare needs, Mother's history of missed medical appointments for the children, the substantiated finding of medical neglect in the Wisconsin dependency proceeding, and the family's flight risk, Jordan was taken into CFS protective custody pursuant to a warrant on June 13, 2016. At that time, Mother denied

---

[1] This court on its own motion ordered the record in case No. E067046 incorporated into the record of the current case. (Cal. Rules of Court, rule 8.147.)

[2] Jordan's sister is not a subject of this appeal. The same referral also led to the filing of a dependency petition for the five children of Mother's stepsister, C.R.

3

any Indian ancestry. A juvenile dependency petition was filed two days later, and Jordan was detained from Mother's custody on June 16, 2016. Mother was present at the detention hearing, was questioned on the record, and denied any Indian heritage. Mother completed the Parental Notification of Indian Status form (ICWA-020) that same date denying any known Indian ancestry.

Wisconsin authorities reported to CFS that genetic testing revealed Mother's father, J.J., to be the biological father of both of Jordan's brothers. Paternity testing ordered by the juvenile court subsequently confirmed that J.J. is also the biological father of Jordan and his sister. Despite the medical evidence, J.J. denied paternity of Mother's children but did admit fathering all five children of Mother's stepsister, C.R. When questioned by CFS on June 13, 2016, J.J. denied any known Indian ancestry. On July 7, 2016, J.J. completed an ICWA-020 form denying any known Indian ancestry. He also denied any Native American ancestry when questioned on the record by the juvenile court at the initial jurisdiction hearing that same date. J.J. is not a party to this appeal.

Mother's and J.J.'s parental rights as to Jordan's surviving brother were terminated by the Wisconsin court on August 11, 2016. Documentation from that proceeding indicates that Jordan's brother was determined not to be an Indian child, and the Wisconsin court found ICWA did not apply.

At the continued contested jurisdiction hearing on October 18, 2016, the juvenile court found Jordan came within subdivisions (b), (d), (e), and (j) of section 300. The following day, the juvenile court found J.J. to be merely the biological father of Jordan

4

and not entitled to reunification services, found that ICWA does not apply, declared Jordan a dependent child of the court, ordered his removal, denied reunification services to both parents, denied visitation for J.J. as detrimental, and ordered supervised visitation for Mother.

At the selection and implementation hearing, the juvenile court selected legal guardianship as Jordan's permanent plan, appointed C.T. as legal guardian, found termination of Mother's parental rights would be detrimental because she had maintained regular visitation and Jordan would benefit from continuing the relationship, and ordered monthly visitation for Mother. At the August 11, 2017, post-permanency review hearing, the juvenile court dismissed the petition and terminated jurisdiction.

B. *Reopened Dependency Proceedings*

On July 1, 2020, C.T., Jordan's guardian, filed a petition pursuant to section 388 requesting that the court terminate the guardianship. The juvenile court set the petition for hearing and ordered CFS to file a response.

CFS recommended that the court grant the petition. C.T. explained that his wife had died, he had remarried, and his job was being transferred to Los Angeles. Rather than uproot Jordan from his school and friends, C.T. proposed that his stepdaughter, Tiffanie O., and her husband, Tadd O., become Jordan's guardians. Tiffanie worked as a licensed vocational nurse, and the couple was already familiar with Jordan's healthcare needs and had been providing respite care for Jordan for some time. Mother had not visited Jordan since February 2018, but she called every once in a while. CFS

recommended that Jordan remain with Tiffanie and Tadd, where he appeared to be happy and well cared for.

On August 26, 2020, the juvenile court terminated C.T.'s guardianship, reinstated Jordan as a dependent child of the court, and approved his continued his placement in Tiffanie and Tadd's home. Permanency planning review hearings were held every six months thereafter. Jordan remained in the home of Tiffanie and Tadd, which received resource family approval on March 2, 2021.

In its August 2021 report, CFS noted that Jordan had some emotional and behavioral disturbances, including fits of anger during which he screams, slams doors, breaks things, and threatens the other children in the home. Those issues were being addressed by Jordan's caregivers, a new therapist, a new psychiatrist who had begun treating Jordan for disruptive behavior disorder and anxiety disorder, and his special education teacher who was working with Jordan's caregivers and the school to develop a new individual education plan. After several years without any visits, Mother contacted CFS sometime in mid-2021 about resuming visits with Jordan. A video visit was conducted, which increased Jordan's negative behaviors. At the request of Jordan's counsel, the court limited Mother's visits to a therapeutic setting "until [Jordan's] behaviors stabilize."

After each visit with Mother, Jordan's disruptive behaviors continued to escalate and would include physical aggression, kicking, biting, smearing feces, and urinating on the carpet. Jordan's extreme reactions after each visit with Mother required his

6

psychologist to stop whatever she was doing and work with Jordan to quell the behaviors, which had slowed Jordan's therapeutic progress significantly. Jordan's behavior was much improved when a monthly visit did not occur. CFS requested that visitation be terminated as detrimental to Jordan's well-being. At the February 2022 review hearing, the juvenile court found Jordan's visits with Mother detrimental and, over Mother's counsel's objection, terminated further visitation.

## DISCUSSION

On appeal from the juvenile court's order terminating her visitation, Mother does not challenge that order on the merits. Rather, she contends that CFS failed to discharge its duty of initial inquiry under state law implementing ICWA, and therefore the juvenile court's finding that ICWA did not apply is unsupported by substantial evidence.

"ICWA was enacted to curtail 'abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes.' [Citation.] 'ICWA reflects a congressional determination to protect Indian children and to promote the stability and security of Indian tribes and families by establishing minimum federal standards a state court must follow before removing an Indian child from his or her family.' [Citation.]" (*In re Dominick D.* (2022) 82 Cal.App.5th 560, 565 (*Dominick D.*).)

An Indian child is any unmarried person under 18 who is either "a member of an Indian tribe or . . . eligible for membership in an Indian tribe and is the biological child of

7

a member of an Indian tribe." (25 U.S.C. § 1903(4); § 224.1, subd. (a).) Because membership and eligibility criteria are set by each tribe, whose determinations are conclusive (§ 224.2, subd. (h)), notice must be provided to all relevant tribes whenever there is "reason to know" that an Indian child is subject to certain proceedings that may culminate in termination of parental rights, adoptive or preadoptive placement, or foster care placement. (§§ 224.3, subd. (a), 224.1, subd. (d).) Notice to the tribes is therefore "central to effectuating ICWA's purpose" because it enables the tribe "to determine whether the child involved in a dependency proceeding is an Indian child and, if so, whether to intervene in, or exercise jurisdiction over, the matter." (*T.G.*, *supra*, 58 Cal.App.5th at p. 288.)

"Because it typically is not self-evident whether a child is an Indian child, both federal and state law mandate certain inquiries to be made in each case." (*In re Benjamin M*. (2021) 70 Cal.App.5th 735, 741 (*Benjamin M*.).) The duty to inquire consists of two phases—the duty of initial inquiry and the duty of further inquiry. (*In re D.F.* (2020) 55 Cal.App.5th 558, 566.) Only the duty of initial inquiry is implicated in the instant case. The duty of initial inquiry begins at the referral stage when CFS must ask "the party reporting child abuse or neglect whether the party has any information that the child may be an Indian child." (§ 224.2, subd. (a).) Once a child is taken into temporary custody, CFS must ask the child, parents, legal guardian, extended family members, and others who have an interest in the child whether the child is or may be an Indian child. (§§ 224.2, subd. (b), 306, subd. (b).) Extended family members include adults who are

8

the child's stepparents, grandparents, aunts, uncles, brothers, sisters, nieces, nephews, or first or second cousins. (25 U.S.C. § 1903(2); § 224.1, subd. (c).) The juvenile court must ask each participant at the first appearance "whether the participant knows or has reason to know that the child is an Indian child," and the court must "instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child." (§ 224.2, subd. (c); see 25 C.F.R. § 23.107(a).) The court must also have each parent complete an ICWA-020 form. (Cal. Rules of Court, rule 5.481(a)(2)(C) & (a)(3).)

CFS is required to document its ICWA inquiry efforts throughout the proceedings, beginning with the petition. (Cal. Rules of Court, rule 5.481(a)(1).) All filings thereafter must include "a detailed description of all inquiries, and further inquiries it has undertaken, and all information received pertaining to the child's Indian status." (Cal. Rules of Court, rule 5.481(a)(5).)

If the court finds that CFS has complied with its duty of inquiry and there is no reason to know that the child is an Indian child, then the court may find that ICWA does not apply. (§ 224.2, subd. (i)(2); Cal. Rules of Court, rule 5.481(b)(3)(A).) Before the juvenile court makes such a finding, it must "first ensur[e] that [CFS] has made an adequate inquiry under ICWA and California law, and if necessary, the court must continue the proceedings and order [CFS] to fulfill its responsibilities." (*In re Antonio R.* (2022) 76 Cal.App.5th 421, 431 (*Antonio R.*).) A juvenile court's finding that ICWA does not apply implies "that social workers had fulfilled their duty of inquiry." (*In re*

9

*Austin J.* (2020) 47 Cal.App.5th 870, 885.) "We review a court's ICWA findings for substantial evidence. [Citations.] 'We must uphold the court's orders and findings if any substantial evidence, contradicted or uncontradicted, supports them, and we resolve all conflicts in favor of affirmance.' [Citation.] Mother, as the appellant, 'has the burden to show that the evidence was not sufficient to support the findings and orders.' [Citation.]" (*Ibid.*)

Mother argues that after the dependency proceedings were reopened in 2020, CFS failed to discharge its expanded duty of initial inquiry by failing to ask extended family members whether Jordan is or may be an Indian child, as required by subdivision (b) of section 224.2. That provision was added to the Welfare and Institutions Code by Assembly Bill 3176, effective January 1, 2019. Among other changes, the legislation established "'a higher standard for determining if a child *may be* an Indian child'" (*T.G.*, *supra*, 58 Cal.App.5th at p. 296) by setting forth specific inquiries into possible Indian status that must be undertaken by child welfare agencies, probation officers, and juvenile courts for any "child for whom a petition under Section 300, 601, or 602 may be or has been filed." (§ 224.2, subd. (a).)

Although the expanded duty of initial inquiry set forth in section 224.2 was not in effect in 2016 when Jordan's dependency petition was filed or when the juvenile court made its finding that ICWA does not apply, it was in effect for all of the proceedings after the July 2020 filing of the petition to terminate the dependency guardianship. Mother contends that the current law, in effect at the time of the orders appealed from,

10

governs this appeal. CFS does not address the issue, citing cases decided both before and after the enactment of Assembly Bill 3176 without acknowledging there was any change in the law. We agree with Mother that the current state law implementing ICWA applies to this appeal. (See *In re A.M.* (2020) 47 Cal.App.5th 303, 321; *T.G.*, *supra*, 58 Cal.App.5th at p. 289, fn. 13; Cal. Rules of Court, rule 5.481(a)(1), amended eff. Jan. 1, 2020.)

Mother points out that CFS had the names and identifying information for maternal grandmother and three maternal aunts with whom she was living when Jordan was removed from the home, but the record does not indicate CFS ever made any inquiry of those extended family members.[3] CFS does not deny that those relatives were never asked about Jordan's possible Indian ancestry. Rather, CFS claims that the juvenile court's finding that ICWA does not apply is supported by substantial evidence because of the "unequivocal denials of Indian ancestry" by both Mother and J.J., bolstered by the Wisconsin court's finding that ICWA did not apply to Jordan's brother. The argument is contrary to section 224.2, subdivision (b), which imposes on CFS a duty "to inquire of a child's extended family members—regardless of whether the parents deny Indian ancestry." (*Antonio R.*, *supra*, 76 Cal.App.5th at p. 431.) Furthermore, the Wisconsin court's 2016 ICWA finding is not useful in determining CFS's compliance with the duty

---

[3] Mother argues for the first time in her reply brief that "CFS failed to make any inquiries of mother when Jordan became a dependent again in 2020" and that it "had a duty to inquire and ask mother about Indian ancestry." On remand, CFS should ask Mother about Indian ancestry if it has not already done so.

of initial inquiry under current California law, particularly where the record does not disclose the factual or legal basis for the Wisconsin court's finding. (See *T.G.*, *supra*, 58 Cal.App.5th at pp. 288-290 [duty of initial inquiry under California law exceeds the minimum procedural protections provided by federal ICWA statute and regulations]; *Benjamin M.*, *supra*, 70 Cal.App.5th at p. 742 [only California law governs an agency's duty of initial inquiry].)

In arguing that there was no initial inquiry error, CFS cites *Benjamin M.* and other cases that CFS misconstrues as applying differing tests for "whether the duty of inquiry had been satisfied." As we explained in *Benjamin M.*, however, the differing tests concern the determination of prejudice, not error. (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 742.)

CFS argues that any error was harmless under the test articulated in *Benjamin M.* because information from extended family members was neither "readily obtainable" nor "likely to bear meaningfully upon whether the child is an Indian child." (See *Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744.)

In arguing the information is not readily obtainable, CFS points out that both Mother and J.J. had been uncooperative in providing truthful information to CFS, that both had moved out of state by 2020 when the proceedings resumed, that the record contains no information that the extended family members continue to reside with Mother, and that CFS lacks their current contact information. The argument fails because CFS never made any attempt to reach the four maternal extended family

members. Mother travelled to the county for several monthly therapeutic visits between August 2021 and February 2022, and CFS failed to ask Mother for her relatives' contact information. We rejected the same argument in *In re K.R.*: "The agency cannot omit from its reports any discussion of its efforts to locate and interview family members who might have pertinent information and then claim that the sufficiency of its efforts cannot be challenged on appeal because the record is silent." (*In re K.R.* (2018) 20 Cal.App.5th 701, 709; accord *In re N.G.* (2018) 27 Cal.App.5th 474, 484; *In re Y.W.* (2021) 70 Cal.App.5th 542, 554.)

CFS's argument that the information is unlikely to bear meaningfully on the question of whether Jordan is an Indian child is equally unavailing. CFS claims that "it is not reasonably probable that further inquiry would yield a different result" because both Mother and J.J. denied Indian ancestry and resided at the outset of the case with the extended family members, none of whom came forward with additional or different information. As we explained in *Benjamin M.*, however, the test is whether the information is likely to bear meaningfully on the inquiry, not on the result: "[I]t would frustrate the statutory scheme if the harmlessness inquiry required proof of an actual outcome (that the parent may actually have Indian heritage), rather than meaningful proof relevant to the determination, whatever the outcome will be." (*Benjamin M.*, *supra*, 70 Cal.App.5th at pp. 743-744; accord *Antonio R.*, *supra*, 76 Cal.App.5th at p. 426 ["the information in the possession of extended relatives is likely to be meaningful in

determining whether the child is an Indian child, regardless of whether the information ultimately shows the child is or is not an Indian child"].)

Nevertheless, in the particular circumstances presented by this appeal, we need not further address the question of harmless error. Although Mother contends without elaboration that the order terminating visitation must be conditionally reversed, she provides no legal argument as to how Jordan's possible Indian child status would have any relevance to the issue of visitation. Indeed, she fails to respond to CFS's argument that the visitation order is independent of the juvenile court's finding that ICWA does not apply. We agree with CFS that the order terminating visitation is unaffected by CFS's failure to discharge its duty of initial inquiry and need not be conditionally reversed. We accordingly vacate the juvenile court's finding that ICWA does not apply, remand for compliance with ICWA and related California law, and otherwise affirm. (See *Dominick D.*, *supra*, 82 Cal.App.5th at p. 568 [failure to discharge duty of initial inquiry does not warrant reversal of findings and orders that are not affected by ICWA error]; *In re S.H.* (2022) 82 Cal.App.5th 166, 177 [there is "no need to 'conditionally' affirm (or reverse) the juvenile court's order, since the order will not necessarily be reversed even if new information were to be discovered confirming the child's Indian heritage"].)

## DISPOSITION

The finding that ICWA does not apply is vacated. The juvenile court is directed to order CFS to comply with its inquiry and (if applicable) notice obligations under ICWA and related California law. In all other respects, the findings and orders are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ
J.

We concur:


SLOUGH
Acting P. J.


FIELDS
J.

15